UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Laura Martin, | ) | Civil Action No.: 9:17-cv-03321-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Laura Martin brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for supplemental security income ("SSI"). This matter is now before the Court for review of the Report and Recommendation ("R & R") of United States Magistrate Judge Bristow Marchant, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rules 73.02(B)(2)(a) and 83.VII.02 (D.S.C.). [ECF # 17]. The Magistrate Judge recommends that the Court affirm the decision of the Commissioner. [ECF #17, p. 20]. This Court has thoroughly reviewed the record in this case and now issues the following Order.

**Statement of Facts and Procedural History**

This Court is tasked with reviewing the denial of Plaintiff's application for disability benefits. Plaintiff applied for supplemental security income ("SSI") on May 9, 2014, alleging a disability date of January 28, 2013 due to diabetic retinopathy, spondylolysis, bipolar type I with depression, spondylolisthesis, scoliosis, borderline personality disorder, and anxiety with panic attacks, as well as a frozen left shoulder, MRSA infection, neuropathy, carpal tunnel syndrome, and issues with two broken feet. [ECF #10-6, Ex. 1D; ECF #10-7, Ex. 3E]. Plaintiff has a history of diabetes mellitus type I. In July of 2012, Plaintiff underwent an EMG which showed bilateral median neuropathy and

peripheral neuropathy. [ECF #10-12, Ex. 5F]. In May of the following year, an MRI of Plaintiff's shoulder revealed what appeared to be a small superficial labral tear, as well as a small infraspinatus tendon defect on the articular side. [ECF #10-12, Ex. 7F]. In October of 2013, Plaintiff was diagnosed with bipolar disorder, psychotic disorder, anxiety disorder and borderline personality disorder. [ECF #10-12; Ex. 4F]. Plaintiff continued to experience left shoulder pain and left foot pain. She also continued to experience neuropathy in her feet, and she reported frequent falls due to this condition. [ECF #10-14, Ex. 11F]. She was evaluated in January of 2014 for her shoulder pain and was assessed with left shoulder capsulitis and referred to physical therapy. [ECF #10-15, Ex. 13F]. In March, after landing funny on her feet, an x-ray revealed fractures in both of her feet; however, the fractures were inoperable. [ECF #10-10, Ex. 3F; ECF #10-12, Ex. 7F]. A bone scan on March 28, 2014 revealed she suffers from osteopenia. [ECF #10-10, Ex. 3F]. Plaintiff continued to experience issues with neuropathy, depression, and issues related to her foot fractures, as well as lingering effects of a MRSA infection. [ECF #10-14, Ex. 12F].

On June 6, 2014, Dr. Julie Arellano completed an assessment form, indicating that Plaintiff had been diagnosed with bipolar disorder, psychotic disorder not otherwise specified, post traumatic stress disorder, and borderline personality disorder. Dr. Arellano opined that Plaintiff's symptoms caused a moderate severity of restriction of daily living, marked difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace and would have repeated episodes of decompensation. She also opined that Plaintiff would be absent from work more than 2 days per month. [ECF #10-13, Ex. 8F]. She further opined that Plaintiff would have complete inability to function independently outside the area of her home. [ECF #10-13, Ex. 8F].

Plaintiff's problems persisted, and on September 6, 2015, Plaintiff was admitted to the hospital

with a 1-2 week long history of hyperglycemia, polydipsia, polyuria, and nausea. She reported at this time that she had fibromyalgia pain in her right arm and right foot. She was discharged with diagnosis of hyperglycemia. [ECF #10-16; Ex. 19F]. Two months later, she presented again with fibromyalgia pain. [ECF #10-17; Ex. 21F]. Plaintiff's problems, including persistent complaints of issues related to diabetes and mental issues continued through 2016.

Plaintiff applied for disability on May 9, 2014. Plaintiff's claim was denied initially and upon reconsideration. After she requested and was granted a hearing, the ALJ denied her claim on February 10, 2017. Plaintiff's request for a review by the Appeals Council was eventually denied, making the findings and determination of the ALJ the final decision of the Commissioner. The ALJ reviewed all of the medical history in the record, as well as Plaintiff's testimony at the hearing. The ALJ subsequently came up with several findings.

The ALJ's findings were as follows:

> (1) The claimant has not engaged in substantial gainful activity since May 9, 2014, the application date (20 CFR 416.971 *et seq.*).
>
> (2) The claimant has the following severe impairments: diabetes mellitus, peripheral neuropathy, bilateral shoulder adhesive capsulitis, Duputyrens contractures, history or MRSA infection, anxiety, borderline personality disorder and bipolar disorder (20 CFR 416.920(c)).
>
> (3) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> (4) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.967(a) except no climbing ladders/scaffolds, occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching, crawling; frequent fingering and

handling bilaterally and occasional overhead reaching. The claimant can have no exposure to vibration or work hazards. She has the ability to concentrate for two-hour increments in the performance of simple, repetitive tasks, but should not work in a fast-paced production environment.

(5) The claimant is unable to perform past relevant work. (20 CFR 416.925).

(6) The claimant was born on March 23, 1974 and was 40 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

(7) The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

(8) Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(9) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

(10) The claimant has not been under a disability, as defined in the Social Security Act, since May 9, 2014, the date the application was filed (20 CFR 416.920(g)).

On December 8, 2017, Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. [ECF #1]. Both Plaintiff and Defendant filed briefs [ECF #13, ECF #14], and the Magistrate Judge issued a Report and Recommendation ("R&R") on December 21, 2018, recommending that the Commissioner's decision be affirmed [ECF #17]. Plaintiff filed objections on January 11, 2019. [ECF #29]. Defendant responded to these objections on January 18, 2019. [ECF #21].

## Standard of Review

I. **Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

II. **The Court's Review of the Magistrate Judge's Report and Recommendation**

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's

5

recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the R & R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

**Applicable Law**

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether she is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that her impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title

6

20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors.

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to

7

impairment prevents claimant from performing past relevant work;[2] and (5) whether the impairment prevents her from doing substantial gainful activity. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational expert demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is

---

prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

8

unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987) (regarding burdens of proof).

## Analysis

Plaintiff raises three objections to the Magistrate Judge's recommendation that the Commissioner's decision be affirmed. First, Plaintiff argues that the Magistrate Judge erred in determining that the ALJ adequately assessed Plaintiff's complaints of fibromyalgia at the second step of the sequential evaluation, as well as erred in finding no error in the ALJ's subsequent RFC assessment based on those findings. Second, Plaintiff argues that the Magistrate Judge erred in finding that the ALJ adequately considered Plaintiff's combination of impairments because Plaintiff asserts that the ALJ did not explain how her multiple impairments affected and limited her in combination. Third, Plaintiff asserts that the Magistrate Judge erred in finding that the ALJ properly supported his reasons for rejecting the opinion of treating physician Dr. Julie Ann Arellano, who gave several opinions regarding Plaintiff's mental conditions and their impact on Plaintiff's ability to do basic work activities.

In his order, the Magistrate Judge recommends finding that the ALJ did not err in assessing Plaintiff's complaints of fibromyalgia because the ALJ appropriately discussed Plaintiff's complaints of fibromyalgia pain as part of the overall RFC assessment, as well as made proper findings at step two of the assessment. Plaintiff objects to the Magistrate Judge's recommendation that the ALJ properly analyzed Plaintiff's fibromyalgia complaints as a "non-severe" impairment and its corresponding effect on the RFC. Plaintiff argues that her fibromyalgia diagnosis meets the requirements at step two of the analysis in finding an impairment "severe," and that the ALJ did not cite to any medical evidence to support the opposite finding. Plaintiff further argues that the ALJ did not evaluate how fibromyalgia affects the RFC in accordance with SSR 12-2p.

9

The RFC is a determination by the ALJ, based on all relevant medical and non-medical evidence, of what a claimant can still do despite her impairments. *See* 20 C.F.R. § 416.945; SSR 96-8p, 1996 WL 374184 (July 2, 1996). Where as here, if more than one impairment is present, the ALJ must consider all of these medically determinable impairments, including those which are not "severe," when determining the RFC. *See See* 20 C.F.R. § 416.945. While there is no medical listing for fibromyalgia, Titles II and XVI of Social Security Ruling 12-2p provide guidance in deciding whether a person has a medically determinable impairment. SSR 12-2p defines fibromyalgia as follows: "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that persisted for at least 3 months." SSR 12-2p provides further guidance as to how a Commissioner should consider fibromyalgia in the five-step sequential evaluation process to determine disability. Specifically, in determining the RFC, the Ruling provides, "[f]or a person with FM [fibromyalgia], we will consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p. The Sixth Circuit has noted that the absence of objective medical evidence to substantiate a fibromyalgia diagnosis is essentially irrelevant. *Kalmbach v. Commissioner*, 409 Fed. Appx. 852, 864 (6th Cir. 2011). Numerous other courts have recognized the subjective nature of fibromyalgia symptoms. *Dowell v. Colvin*, No. 1:12CV1006, 2015 WL 1524767, at *3 (M.D.N.C. April 2, 2015).

The Magistrate Judge determined that the ALJ did not commit reversible error in his assessment of Plaintiff's fibromyalgia diagnosis, in part because Plaintiff had other medical diagnoses that could result in complaints similar to fibromyalgia. However, as pointed out by Plaintiff in her objections, the ALJ did not give that specific justification in determining that fibromyalgia was not a severe impairment. In fact, while the ALJ briefly mentions within the decision that Plaintiff "alleges pain in

10

her shoulders, hands, upper and lower back, legs and feet that is caused by fibromyalgia and neuropathy," the ALJ does not otherwise specifically consider or assess Plaintiff's complaints of fibromyalgia in any other part of his decision. [ECF #10-2, p. 23]. Thus, not only did the ALJ determine that Plaintiff's fibromyalgia was not a severe disorder, the ALJ also did not specifically consider a fibromyalgia diagnosis at step two of the evaluation. This is the case despite the fact that at the hearing, Plaintiff testified that she was experiencing pain due to fibromyalgia and diabetic neuropathy. [ECF #10-2, p. 42]. She further testified that her doctors have explained to her that her back pain is caused by fibromyalgia, while explaining to her at another appointment that her pain was due to scoliosis. [ECF #10-2, p. 47]. There are at least three instances (as indicated by the Magistrate Judge) where Plaintiff's medical records reference a diagnosis for fibromyalgia. As pointed out by the Magistrate Judge, Plaintiff's initial diagnosis of fibromyalgia appears in a medical record dated July 17, 2014. While this is over a year after her disability onset date, Plaintiff has had a long history of complaints associated with chronic pain, tenderness, and fatigue, and as indicated in SSR 12-2p, this particular impairment necessitates a consideration of a claimant's longitudinal record. Further, while Plaintiff complained of pain associated with fibromyalgia at the hearing and complaints with this condition are indicated in her medical records, the ALJ does not offer any explanation as to why he determined this impairment did not impact the RFC, aside from mentioning this testimony in discussing the RFC.

SSR 12-2p sets forth an explanation as to how a claimant can establish whether fibromyalgia is a medically determinable impairment. SSR 12-2p further explains how to properly evaluate fibromyalgia under the Act. Because it does not appear that the ALJ considered in the first instance whether fibromyalgia was a severe impairment at step two, along with the fact that the ALJ did not

11

appear to explain why fibromyalgia would or would not have an impact on the RFC, this Court cannot determine whether substantial evidence supports the ALJ's findings in this case. Accordingly, this Court finds that this case should be remanded to allow the ALJ to conduct an analysis of Plaintiff's issues with fibromyalgia and determine its impact, if any, on Plaintiff's RFC. Because this Court is remanding this matter back to the Commissioner, this Court also finds that the ALJ should take into consideration the other allegations of error, and make appropriate findings as to the other allegations of error as well, to the extent those determinations are impacted by the additional analysis performed with respect to Plaintiff's fibromyalgia.

## Conclusion

The Court has thoroughly considered the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections, and the applicable law. For the above reasons, the Court respectfully rejects the Magistrate Judge's recommendation to affirm the Commissioner's decision [ECF #17], and remands this case for further fact finding consistent with this Order. The Commissioner's decision is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and this case is remanded to the Commissioner for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

Florence, South Carolina  
March 11, 2019

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge